CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 7 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:15CR00045-4 |
| | ) | (Civil Action No. 7:16CV81203) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DEVONA SUE TERRY, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | United States District Judge |

Devona Sue Terry has moved to vacate, set aside, or correct her federal sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and the time allotted for Terry to respond has expired, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Terry's motion to vacate will be denied.

## Background

On November 12, 2015, a grand jury in the Western District of Virginia returned a superseding indictment against Terry and four codefendants. The superseding indictment charged the defendants with multiple drug and firearm offenses. On November 18, 2015, Terry entered a plea of guilty to Count One, in which she was charged with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846.

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR") that summarized Terry's involvement in the heroin conspiracy. According to the PSR, the case against Terry arose from an investigation conducted by the High Intensity Drug Trafficking Area Task Force ("Task Force") in Roanoke, Virginia, following a September 13, 2014 traffic stop involving one of Terry's codefendants, Juan Reyes. After the traffic stop, Task

Force officers obtained a warrant to search the motel room in which Reyes reportedly had been staying. While executing the warrant, the officers located three occupants in the motel room—Terry; her husband, Cleveland Terry ("Cleveland"); and their nine-year-old son. They also discovered 24 individual packets of heroin, hypodermic needles, and spoons containing drug residue. A sawed-off shotgun and several glass pipes were also located in a black duffle bag. Upon being questioned, Terry admitted ownership of all of the items found. She was subsequently arrested on state drug and firearm charges.

On October 4, 2014, a confidential informant ("CI") advised Task Force officers that Kelly Combs had requested to use the CI's vehicle for the purpose of purchasing heroin in another state. In cooperation with the Task Force, the CI agreed to allow Combs to use the vehicle. Combs told the CI that she and the group of people with whom she was traveling were taking $10,000 with them, and that they planned to return to Roanoke to sell bundles of heroin. A GPS tracker that had been installed on the vehicle indicated that it was driven to Baltimore, Maryland, where it remained overnight.

On October 5, 2014, the vehicle was stopped by officers with the Virginia State Police. Cleveland was identified as the driver of the vehicle, and the other occupants were identified as Terry, Combs, Hameen Irvin, and the Terrys' minor child. Cleveland consented to a search of the vehicle. A police canine unit was called to the scene, and the dog alerted to the presence of narcotics. Combs subsequently admitted to being in possession of heroin and drug paraphernalia. While Combs was being searched, a trooper noticed a plastic bag fall from Terry's pant leg. The bag was retrieved, and it was found to contain 64 vials and capsules of

heroin. Thirty-three additional vials and capsules of heroin were recovered from Combs. The

adults were arrested and transported to the Roanoke County Jail.

A number of individuals testified before the grand jury. One witness testified that Terry

and her codefendants had been to the witness's house, where they sat at her kitchen table and

repackaged heroin into smaller bags. Another witness testified that Terry had been on trips to

New York to obtain heroin. A third witness testified that Terry and her codefendants had stayed

at his residence for several weeks, and that he had observed Irvin distribute quantities of heroin

to Terry and Cleveland for them to sell or deliver.

Subsequent interviews of Combs, Irvin, and Cleveland revealed a conspiracy in which

large quantities of heroin were brought from New York and Maryland to Roanoke. Combs

reported that she and Terry were in charge of setting up drug deals, and that it was Terry who

had learned of a contact in Baltimore who could supply heroin. Likewise, Cleveland indicated

that the group had selected Baltimore for their last trip because his wife had obtained the contact

information for a heroin dealer in that area. Irvin reported that in order to fund the trips out of

state to purchase heroin, he, Terry, and Cleveland stole merchandise from a Lowe's store and

returned the items for gift cards, which were later sold for cash. Irvin also described various

group trips to New York and Maryland to purchase heroin, in which Terry participated. Based

on the foregoing evidence, the probation officer determined that Terry was responsible for

between 400 and 700 grams of heroin, as well as the firearm found in the motel room.

Terry appeared for sentencing on March 22, 2016. The court adopted the PSR, which

calculated a total offense level of 25. With a criminal history category of II, the defendant's

advisory Sentencing Guidelines range was 63 to 78 months in prison. The court varied

downward and imposed a term of imprisonment of 57 months. Terry did not appeal her conviction or sentence.

Terry has since moved to vacate her sentence under 28 U.S.C. § 2255. Terry argues that she should have received a minor role adjustment based on Amendment 794 to the Sentencing Guidelines, which took effect on November 1, 2015, prior to the defendant's sentencing hearing.

## Discussion

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack her sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "The Supreme Court has interpreted this provision such that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks the authority to review it unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Foote 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)). This "remarkably high bar" is "only satisfied when a court is presented with 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

In this case, Terry does not identify any constitutional, statutory, or jurisdictional sentencing error. Indeed, Terry was sentenced well below the statutory maximum term of imprisonment of 20 years under 21 U.S.C. § 841(b)(1)(C). Terry instead argues that she should have received a reduction based on Amendment 794 to the Sentencing Guidelines. Amendment

794 amended the Commentary to § 3B1.2, which provides for varying reductions to a defendant's offense level if the defendant's participation in the offense was minimal, minor, or somewhere in between. See U.S.S.G. § 3B1.2.

Under existing precedent, the defendant's claim of sentencing error is not cognizable under § 2255. The United States Court of Appeals for the Fourth Circuit has made clear that "misapplication of the sentencing guidelines does not amount to a miscarriage of justice," United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999), and thus is not a viable basis for collateral relief. See Foote, 784 F.3d at 940 (holding that the defendant's claim that he was erroneously designated as a career offender under the Sentencing Guidelines was not cognizable on collateral review, since the alleged error "was not a fundamental defect that inherently results in a complete miscarriage of justice"); see also United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999) (explaining that "while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines").

Moreover, even if Terry's claim were cognizable on collateral review, it would still fail for lack of merit. In short, based on the evidence summarized in the presentence report, which Terry does not dispute, and the factors set forth in the Commentary to § 3B1.2, the court remains convinced that Terry did not play a role in committing the offense that made her "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, app. n. 3(A). Accordingly, Terry was not entitled to a minor role adjustment. Id.

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Terry's § 2255 motion. Additionally, because Terry has failed to make a substantial showing of

the denial of a constitutional right, the court will deny a certificate of appealability.  See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This ⁊ᵗʰ day of November, 2017.

_____
United States District Judge